STATE OF MINNESOTA                           DISTRICT COURT

COUNTY OF RAMSEY                   SECOND JUDICIAL DISTRICT

Case Type: Employment
Court File No.: _____
Judge: _____

Jamie C. Andrews,

     Plaintiff,

     vs.                                                **SUMMONS**

Fairview Health Services,

     Defendant.

---

**THIS SUMMONS IS DIRECTED TO FAIRVIEW HEALTH SERVICES, BY AND THROUGH ITS REGISTERED AGENT, CT CORPORATION SYSTEM INC., AT ITS REGISTERED OFFICE ADDRESS: 1010 DALE STREET NORTH, ST. PAUL, MINNESOTA, 55117.**

    1. **YOU ARE BEING SUED**. The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

    2. **YOU MUST REPLY WITHIN 21 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this summons **a written response** called an Answer within 21 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this summons.

    3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

    4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 21 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the



Plaintiff everything asked for in the complaint. If you do not want to contest the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

     **5. LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case**.

     **6. ALTERNATIVE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

**DATED:** June 1, 2021

**HALLER KWAN LLP**

By:_____
    Benjamin Reid Kwan (395481)
    C. Ted Haller IV (396496)

323 Washington Ave. N.
Suite 200, T3 Building
Minneapolis, Minnesota 55401
612-206-3761
ben@hallerkwan.com
ted@hallerkwan.com

*Attorneys for Plaintiff*

2

STATE OF MINNESOTA                                          DISTRICT COURT

COUNTY OF RAMSEY                              SECOND JUDICIAL DISTRICT

|  |  |
|---|---|
| | Case Type: Employment |
| | Court File No.: _____ |
| | Judge: _____ |

Jamie C. Andrews,

        Plaintiff,

        vs.                                          **COMPLAINT**

Fairview Health Services,

            Defendant.                          **JURY TRIAL
DEMANDED**

---

      Plaintiff Jamie C. Andrews brings the following civil complaint and demand for a

jury trial against her former employer, Defendant Fairview Health Services, for violating

laws protecting her from discharge, reprisal, and interference with her employment

rights because she needed time to care for her disabled child.

### PARTIES, JURISDICTION, AND VENUE

    1.     Plaintiff Jamie C. Andrews ("Plaintiff") is an adult female resident of the

City of Maplewood, County of Ramsey, State of Minnesota.

    2.     Defendant Fairview Health Services ("Defendant" or "Fairview") is a

Minnesota nonprofit health system organized under Minn. Stat. § 317A *et seq.* whose

corporate address and headquarters is located at 2450 Riverside Avenue in the City of

Minneapolis, County of Hennepin, State of Minnesota.

    3.     The jurisdiction of this Court is invoked, and venue is proper, because the

implicated violations of state and federal laws occurred in Ramsey County where

Defendant employed Plaintiff at its M Health Fairview St. John's Hospital in Maplewood, Minnesota.

## FACTUAL ALLEGATIONS

*Plaintiff's Work for Defendant and the Illegal Termination of Her Employment*

4.      Defendant hired Plaintiff in May 2018 to work as a phlebotomist in the lab at its M Health Fairview St. John's Hospital in Maplewood, Minnesota ("St. John's Hospital").

5.      Defendant typically scheduled Plaintiff to work mornings in the lab, usually from about 5 or 5:30 a.m. until 1:30 or 2 p.m.

6.      Plaintiff's first performance evaluation indicates quality work and relationship-building at St. John's Hospital during her first half-year on the job:

> Jamie you are a very skilled and efficient phlebotomist. You are great with patients, making them feel at ease, striking up conversations, putting their safety first and you provide excellent patient care. Thank you for always making sure the lab and outpatient area is clean and tidy and helping perform the weekly/monthly cart maintenance and daily outpatient cleanliness audits.

7.      Defendant terminated Plaintiff's employment on July 22, 2020.

8.      Defendant communicated to Plaintiff that its reason for discharge related to alleged attendance issues on June 5, 6, 7, 12, and 19, 2020 (the "Reason for Discharge").

9.      By the time Defendant terminated Plaintiff's employment on July 22, 2020, however, Plaintiff had applied for, a medical provider had certified, and Defendant's leave management division had approved and granted protections for Plaintiff under

the Family and Medical Leave Act ("FMLA") for absences relating to Plaintiff's need to sometimes provide emergency care for her disabled son.

10. Before Defendant decided to terminate Plaintiff's employment on July 22, 2020, Plaintiff had communicated to at least two managers at St. John's Hospital, as well as to Defendant's absence management division, that the attendance issues connected to the Reason for Discharge were all FMLA-related attendance issues.

11. Plaintiff had also followed her department's normal practices and procedures for reporting absences prior to the start of each shift had been set to begin.

12. Plaintiff also followed up with her direct supervisor regarding the absences soon after to confirm her need for them to be designated as FMLA-related.

13. Defendant nevertheless terminated Plaintiff's employment, citing the FMLA-protected days as justification for the adverse employment action, a violation of Plaintiff's legal rights.

*Plaintiff's Need for the Family and Medical Leave Act's Protections*

14. Work at St. John's was a godsend for Plaintiff—in part because of its close proximity to Plaintiff's home (1.2 miles), where emergency care for her disabled son is frequently necessary.

15. Plaintiff and her wife, Andrea Sullivan, met in 2008 and wed after marriage between same-sex couples became legal in Minnesota.

16. When Ms. Sullivan and Plaintiff legally married, Plaintiff legally adopted Ms. Sullivan's son, Shane Sullivan, whom Plaintiff had been caring for since he was a small boy.

3

17.    Since birth, Shane Sullivan has suffered debilitating autism and related neurological disorders that require fulltime care and supervision. Shane is non-verbal and suffers from seizures two to three times a week. He also self-harms frequently and has a sleep disorder that can keep him awake (along with his family) for days.

18.    Shane Sullivan's condition requires constant attention from his moms when he is not under the care of providers — which is most of the time, since the family cannot afford any in-home care.

19.    Plaintiff's direct supervisor at St. John's, Jamie Moser, knows Plaintiff's son is disabled.

20.    Plaintiff's direct supervisor at St. John's, Jamie Moser, knows Plaintiff's son suffers from serious health conditions.

21.    Defendant's Absence Management department knows that Plaintiff's son is disabled.

22.    Defendant's Absence Management department knows that Plaintiff's son suffers from serious health conditions.

23.    On weekdays, Plaintiff's family brings Shane Sullivan to a privately-run day program called Dynamic Connections.  The private program is so expensive, tuition eats up all of Shane Sullivan's state disability waiver each month, leaving Plaintiff and her wife to pick up the balance of the program costs and all other expenses relating to continuing care for Shane, such as disability modifications to the home like locks on every door, sensory toys, and any necessary household cleaning help like laundry services. The family could never realistically afford an at-home personal care attendant.

24. For some time while she was employed at St. John's Hospital, Plaintiff would use her first morning break of 30 minutes at about 8:30 a.m. to run home to administer Shane's morning medications — a critical part of Shane's care over which she takes primary responsibility.

25. At some point, Plaintiff's manager forbade the practice, even though Plaintiff typically returned so quickly that she cut her break short.

26. Thereafter, either Plaintiff's wife Andrea Sullivan, a relative, or a friend would drive Shane to the doors of St. John's Hospital so Plaintiff could step outside but remain on campus to administer Shane's morning medications.

27. Moreover, adding to the family's challenges, Shane's day program does not accommodate significant medical issues like fecal smearing or accidents. Thus, in the event something of the sort happened (it did and often does), Plaintiff — who had FMLA protections under law whereas her wife, a bartender for a small employer, did not — would unfortunately be summoned to fetch Shane to bring him home and bathe him. The program also summons a parent if Shane falls asleep or if he is self-harming.

28. Shane also wakes the family in the middle of the night during bouts of self-harm or fecal smearing — emergencies Plaintiff is required to attend to immediately. Emergencies that sometimes interfered with her ability to get to work, unfortunately.

5

*Defendant's Intimate Knowledge of Plaintiff's Need for FMLA Protections*

29.     By the spring of 2019, about a year into her employment in the St. John's Hospital lab, Plaintiff had amassed a modest list of absences and late arrivals — all occasioned by emergency care for Shane.

30.     Defendant verbally coached Plaintiff on attendance issues and also issued a write-up outlining the attendance concerns and warning Plaintiff that they were becoming excessive.

31.     During those conversations, Plaintiff informed Defendant that the reason she had attendance issues related to her son's serious health condition.

32.     Eventually in 2019, discussions around Plaintiff's absences alerted Defendant to Plaintiff's legal entitlement to FMLA protections for her job in the event she needed time off to care for a family member with a serious health condition.

33.     On or about August 28, 2019, Defendant, through its former third-party benefits administrator, UNUM, confirmed Plaintiff's eligibility for FMLA intermittent leave based upon a medical certification provided by Shane's provider.

34.     Defendant initially approved Plaintiff's use of FMLA intermittent leave for the time period beginning August 8, 2019 and ending February 7, 2020.

35.     Thereafter, Plaintiff complied with her employer's notice requirements regarding FMLA-related absences as they occurred and did not exhaust her FMLA entitlement.

36.     Initial FMLA protections lapsed on or about February 8, 2020.

6

37.     After February 8, 2020, Plaintiff's co-workers and supervisors maintained knowledge that continuing absences related to the need to care for a dependent family member with a serious health condition.

38.     After February 8, 2020, Plaintiff experienced communication troubles with Defendant's Absence Management department—a new entity to her since the change-over from using HealthEast's third-party benefits administrator, UNUM, to qualify for her first period of FMLA protections. (St. John's used to be a HealthEast hospital before being acquired or merged with Defendant.)

39.     For instance, upon being told she needed a re-certification from Shane's providers in March and April of 2020, Plaintiff told Cheryl Talbot in absence management on April 8, 2020, that Shane's providers weren't seeing patients due to Covid-19.

40.     In the back and forth, the ultimate need for certification became unclear to Plaintiff amidst communications.

*Defendant Ignores Plaintiff's Pleas for Help Sorting Out FMLA Issues*

41.     By June 2020, Plaintiff was of course still tending to the monthly, weekly, and daily challenges of caring for a child with significant disabilities.

42.     Absences or tardies accumulated from time to time between February 2020 and June 2020, allegedly unprotected by the FMLA due to the February 2020 lapse in coverage.

43.     On June 9, 2020, Plaintiff's direct supervisor, Jamie Moser, issued a Final Written Advisement regarding attendance that, troublingly, cites protected FMLA days among its justifications.

44.     During a discussion between Ms. Moser and Plaintiff about the June 9 written warning, it became clear to Plaintiff that her FMLA coverage had indeed lapsed.

45.     Plaintiff immediately obtained a provider's note relating to absences during the first week of June 2020 and gave it to Defendant.

46.     Plaintiff also got back in touch with Cheryl Talbot in Defendant's Absence Management division to clear up any clerical shortcomings so that she would continue to have FMLA protections.

47.     During the ensuing re-certification back-and-forth, Ms. Talbot told Plaintiff to keep track of attendance issues that might be covered by FMLA. Plaintiff did so and communicated them according to normal, established practice and procedure at St. John's Hospital.

48.     On or about July 16, 2020, Defendant approved Plaintiff for renewed, intermittent FMLA protections and back-dated the FMLA protections to June 3, 2020.

49.     During the certification process and at the hospital, Plaintiff reports that her supervisor, Ms. Moser, and Ms. Moser's boss, Charlie, pulled Plaintiff into the office one day on or around the week following July 4, 2020. Plaintiff arrived and asked if Charlie and Ms. Moser were about to fire her, because they had prepared a document listing a number of attendance issues in June that Plaintiff could see.

8

50.     Plaintiff preemptively objected, reporting to Charlie and Ms. Moser that she could not be disciplined or fired for the absences listed on the document since they were or would be covered by law under the FMLA.

51.     Charlie glared at Ms. Moser, asking something like, "is that true?" and Ms. Moser stayed silent.  Charlie then looked to Plaintiff, rolled his eyes, threw his hands up, and ordered Plaintiff to return to work.

52.     About a week after, Defendant approved Plaintiff's leave for the period June 3, 2020 through June 2, 2021.

53.     Despite this, on July 22, 2020, Charlie and Ms. Moser again summoned Plaintiff to the office at about 11 a.m., more than halfway through Plaintiff's shift that day. At that time, they notified Plaintiff that her employment was being terminated for attendance policy violations—of which cited bases included protected FMLA days.

54.     Plaintiff believes that the evidence will show her supervisors have treated her less favorably with respect to the terms and privileges of her employment (such as use of FMLA leave and attendance-related accommodations, among other things) compared to similarly situated employees who are not gay and do not associate with a child who is disabled.

55.     Plaintiff believes that the evidence will show that she was harassed and subjected to reprisals because of her association with Shane, a disabled individual.

### CLAIMS

### COUNT I

### FMLA ENTITLEMENT, 28 U.S.C. § 2601 *ET SEQ.*

56.     Plaintiff incorporates the foregoing paragraphs by reference.

9

57.    Section 2612 of the FMLA permits an employee to take up to twelve weeks of leave each twelve-month cycle in order for the employee to take care of his or her spouse, son, daughter, or parent if the employee's spouse, son, daughter, or parent has a serious health condition. 29 U.S.C. § 2612(a)(1)(C).

58.    Section 2615 of the FMLA makes it unlawful for any employer to interfere with the employee's exercise of or attempt to exercise the right to take care of his or her spouse, son, daughter, or parent. 29 U.S.C. § 2615(a)(1).

59.    Stated another way, Defendant's FMLA "entitlement" liability arose where Defendant refused to authorize leave under the FMLA or took action to avoid its responsibilities to Plaintiff under the Act. *See Pulczinski v. Trinity Structural Towers, Inc.*, 691 F.3d 996, 1005 (8th Cir. 2012)

60.    Plaintiff was an eligible employee under the FMLA. 29 U.S.C. § 2611(2)(A).

61.    Defendant is an employer under the FMLA. 29 U.S.C. § 2611(4)(A).

62.    Defendant knew Plaintiff's son had a serious health condition, and know of Plaintiff's interests, intention, and/or desire to take FMLA leave.

63.    Defendant interfered with Plaintiff's exercise of FMLA leave by, among other things, terminating her employment and using what necessarily were FMLA-protected days off as the purported justification for the discharge.

64.    As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages including, but not limited to, past and present loss of

income, lost benefits, out-of-pocket damages, and other harms compensable with money damages to be proven and awarded by the trier of fact.

65.     Plaintiff also claims and is entitled to all relief available in equity for Defendant's violations of the FMLA.

66.     Plaintiff also claims and is entitled to attorneys' fees and costs incurred in connection with this claim plus liquidated damages.

## COUNT II

### FMLA DISCRIMINATION, 28 U.S.C. § 2601 *ET SEQ.*

67.     Plaintiff incorporates the foregoing paragraphs by reference.

68.     Section 2615 of the FMLA forbids employers from discriminating against employees with respect to the terms and conditions of employment for exercising his or her rights under the FMLA. § 2615(a)(1)-(2). *See Pulczinski*, 691 F.3d at 1006.

69.     Defendant discriminated against Plaintiff by terminating Plaintiff's employment after Plaintiff exercised or attempted to exercise her rights under the FMLA.

70.     As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages including, but not limited to, past and present loss of income, future loss of income, lost benefits, out-of-pocket damages, and other harms compensable with money damages to be proven and awarded by the trier of fact.

71.     Plaintiff also claims and is entitled to all relief available in equity for Defendant's violations of the FMLA.

72.     Plaintiff also claims and is entitled to attorneys' fees and costs incurred in connection with this claim plus liquidated damages.

## COUNT III

### FMLA RETALIATION, 28 U.S.C. § 2601 *ET SEQ.*

73.     Plaintiff incorporates the foregoing paragraphs by reference.

74.     Section 2615 of the FMLA also forbids employers from retaliating against employees who oppose any practice made unlawful under the FMLA. § 2615(a)(2). *See also Pulczinski*, 691 F.3d at 1006.

75.     Plaintiff opposed practices made unlawful under the FMLA by, for example, pointing out that she should not be disciplined or discharged in connection with FMLA-protected absences during several meetings and conversations prior to her termination from employment.

76.     Defendant retaliated against Plaintiff following her oppositional acts by terminating her employment because of her oppositional acts.

77.     As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages including, but not limited to, past and present loss of income, future loss of income, lost benefits, out-of-pocket damages, and other harms compensable with money damages to be proven and awarded by the trier of fact.

78.     Plaintiff also claims and is entitled to all relief available in equity for Defendant's violations of the FMLA.

79.     Plaintiff also claims and is entitled to attorneys' fees and costs incurred in connection with this claim plus liquidated damages.

12

<u>COUNT IV</u>

**MHRA REPRISAL –**
**ASSOCIATION WITH DISABLED PERSON, MINN. STAT. § 363A.01 *ET SEQ.***

80.     Plaintiff incorporates the foregoing paragraphs by reference.

81.     Under Section 363A.15 of the Minnesota Human Rights Act ("MHRA"),
"[i]t is an unfair discriminatory practice for any individual who participated in the
alleged discrimination . . . to intentionally engage in any reprisal against any person
because that person . . . associated with a person or group of persons who are disabled."
Minn. Stat. § 363A.15(2). "A reprisal includes, but is not limited to, any form of
intimidation, retaliation, or harassment." *Id.*

82.     Plaintiff's son is a "disabled person" under the MHRA. Minn. Stat. §
363A.03, subd. 12.

83.     Defendant engaged in unlawful MHRA reprisal because of Plaintiff's
association with her disabled son, when, among other things, Defendant terminated
Plaintiff's employment.

84.     As a result of Defendant's wrongful conduct, Plaintiff has suffered and
will continue to suffer damages including, but not limited to, past, present and future
loss of income, lost benefits, out-of-pocket damages, mental anguish, emotional distress,
physical manifestations of emotional distress, humiliation, embarrassment, loss of
reputation, other pain and suffering and other equitable damages, all in an amount to
be proven at trial and awarded by the trier of fact. Plaintiff is also entitled to her
attorneys' fees and costs incurred in pursuing this matter, as well as punitive damages
and treble damages.

13

85.     Plaintiff is entitled to full relief under the MHRA including any equitable relief ordered by the Court to correct Defendant's illegal behavior.

### COUNT V

**MHRA DISCRIMINATION – SEXUAL ORIENTATION, MINN. STAT. § 363A.01**
***ET SEQ.***

86.     Plaintiff incorporates the foregoing paragraphs by reference.

87.     Section 363A.08, subd. 2, of the MHRA provides that it is unlawful for an employer "because of . . . sexual orientation . . . [to] discharge an employee [or] discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment."

88.     Defendant discriminated against Plaintiff based on, among other things, her sexual orientation, when Defendant terminated Plaintiff's employment.

89.     As a result of Defendant's wrongful conduct, Plaintiff has suffered and will continue to suffer damages including, but not limited to, past, present and future loss of income, lost benefits, out-of-pocket damages, mental anguish, emotional distress, physical manifestations of emotional distress, humiliation, embarrassment, loss of reputation, other pain and suffering and other equitable damages, all in an amount to be proven at trial and awarded by the trier of fact. Plaintiff is also entitled to her attorneys' fees and costs incurred in pursuing this matter, as well as punitive damages and treble damages.

90.     Plaintiff is entitled to full relief under the MHRA including any equitable relief ordered by the Court to correct Defendant's illegal behavior.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Jamie Andrews requests that judgment be entered against

Defendant Fairview Health Services, as follows:

1.     For an Order adjudging the practices and conduct of Defendant complained of herein to be in violation of the rights guaranteed to Plaintiff under the FMLA;

2.     For an Order adjudging the practices and conduct of Defendant complained of herein to be in violation of the rights guaranteed to Plaintiff under the MHRA;

3.     All relief recoverable under the FMLA and MHRA including, but not limited to, back pay, front pay, lost benefits, compensatory damages for future pecuniary loss, emotional distress, physical manifestations of emotional distress, humiliation, embarrassment, loss of reputation, mental anguish, inconvenience, civil penalties, and interest, all in an amount to be proven at trial and awarded by the trier of fact;

4.     For an award of punitive damages under the MHRA, in an amount to be determined at trial;

5.     For treble damages and a civil penalty as provided by the MHRA;

6.     For liquidated damages as provided by the FMLA;

7.     For an award to Plaintiff of her attorneys' fees, disbursements, and the costs of this action as available at law or in equity;

8.     For an award of pre-judgment and post-judgment interest;

9.     For all such other and further relief available by statute; and

10.    For such other and further relief as the Court deems just and equitable.

## PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff demands a jury trial as to all claims so triable.

15

DATED: June 1, 2021

HALLER KWAN LLP

By:＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

Benjamin Reid Kwan (395481)
C. Ted Haller IV (396496)

323 Washington Ave. N.
Suite 200, T3 Building
Minneapolis, Minnesota  55401
612-206-3761
ben@hallerkwan.com
ted@hallerkwan.com

*Attorneys for Plaintiff*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.21 to the party against whom the allegations in this pleading are asserted.

**DATED**:  June 1, 2021

**HALLER KWAN LLP**

By:_____
      Benjamin Reid Kwan (395481)
      C. Ted Haller IV (396496)

323 Washington Ave. N.
Suite 200, T3 Building
Minneapolis, Minnesota  55401
612-206-3761
ben@hallerkwan.com
ted@hallerkwan.com

*Attorneys for Plaintiff*

17